**In the United States District Court**
**for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation**,
               **Petitioners,**

**v.**                                           **Case No. 19-cv-2491-JAR-JPO**

                                               **(This Document Relates to Case No. 14-cr-20096-JAR-5,** *United States v. Joshua Alvarez***, and Case No. 18-cv-2449-JAR-JPO,** *Joshua Alvarez v. United States***)**

**United States of America.**
                   **Respondent.**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Joshua Alvarez's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 539),[1] as supplemented.[2]  Petitioner alleges the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications.  As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or alternatively, to reduce his term of imprisonment by approximately 50% and vacate his term of supervised release.  The government has responded, opposing the motion and seeking dismissal on jurisdictional grounds.[3]  For the reasons explained

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, Case No. 14-20096-JAR-5.  Citations prefaced with "*CCA Rec. Lit.*, Doc." refer to filings and entries in this consolidated case, Case No. 19-2491-JAR-JPO.  With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] *CCA Rec. Lit.* Doc. 87.

[3] *Alvarez v. United States*, No. 18-2449-JAR-JPO, Docs. 5, 7.

in detail below, Petitioner's challenge to his conviction and sentence are dismissed for lack of standing.

## I.      Background

### A.      Procedural History

On January 7, 2016, Petitioner pleaded guilty to Count 1 of a superseding indictment, charging him with conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii).[4] In exchange for Petitioner's guilty plea pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government agreed to dismiss an information filed pursuant to 21 U.S.C. § 851, and Count 19 of the superseding indictment charging him with distributing 50 grams of methamphetamine.[5]  As part of the agreement, the parties proposed that this Court sentence Petitioner to a total term of 144 months' imprisonment on Count 1.[6]  On April 4, 2016, this Court sentenced Petitioner to 144 months' imprisonment.[7]  Petitioner did not file a direct appeal of his conviction or sentence, nor has he filed a prior habeas motion under 28 U.S.C. § 2255.

Petitioner was represented by Robb Edmonds in the underlying criminal proceedings. The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in his § 2255 proceedings on July 17, 2018.[8]  On August 28, 2018, the FPD filed a motion pursuant to 28 U.S.C. § 2255 on Petitioner's behalf, setting forth a single ground for relief: the government violated  the Sixth Amendment by intentionally and unjustifiably intruding into his attorney-

---

[4] Doc. 182.

[5] *Id.* ¶ 5.  The § 851 information would have resulted in a mandatory minimum sentence of 20 years on Count 1.  *Id.* ¶ 78.

[6] *Id.* ¶ 3.

[7] Doc. 249.

[8] Standing Order 18-3.

client communications.  The government responded to the motion and Petitioner replied.[9]
Petitioner is currently incarcerated at Pollock, FCI, and his release date is April 28, 2025.[10]

### B.    The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black*
Order") that precipitates the § 2255 motions before the Court.[11]  That comprehensive opinion
was intended to provide a record for future consideration of the many anticipated motions filed
pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the
underlying facts and conclusions of law in detail but will provide excerpts from the record as
needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events that came to light in the *Black* case and
investigation, which involved audio recordings of telephone conversations and soundless video
recordings of meetings between attorneys and their clients who were detained at CCA.  The
government admits that it obtained videos from CCA in connection with the *Black* case, which
focused on drug and contraband trafficking inside CCA.  The government's possession of these
recordings came to light in August 2016, when then-Special Assistant United States Attorney
("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn
Rokusek of "jeopardiz[ing] their investigation" in *Black* based on information they claimed to
have gleaned from the video recordings.[12]  The defense also discovered that the  United States

---

[9] *Alvarez*, No. 18-2449-JAR-JPO, Docs. 5, 6.

[10] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Mar. 22, 2021).

[11] Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).  As discussed in that Order, the Sixth
Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at
Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience,
the Court refers to it as CCA in this Order.

[12] *Id.* at 70–80.

Attorney's Office for the District of Kansas ("USAO") had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[13]

Once notified of the video and audio recordings, this Court ordered (1) all local federal detention facilities to cease recording attorney-client meetings and phone calls;[14] (2) the video and audio recordings in USAO custody to be impounded;[15] and (3) the government to preserve its computer hard drives.[16] By October 11, 2016, the Court had appointed a Special Master to assist in what the Court termed "Phase I and Phase II" of the Court's investigations, that is, to determine the number of recordings possessed by the government and how to index and segregate them, and to identify privileged or confidential information within those recordings.[17]

On January 31, 2017, the Special Master issued the "First Report Regarding Video Recordings."[18] The Special Master determined that the government had obtained from CCA video recordings of the attorney-inmate rooms made between February 20, 2016, and May 16, 2016—a period of 86 days, or approximately 14,000 hours—documenting approximately 700 attorney visits.[19] This Court in *Black* found that the USAO did not come into possession of the CCA videos until June 1, 2016.[20] The Court has since clarified that the government's possession of the video recordings began when the United States Secret Service picked up DVR 6 from

---

[13] *Id.* at 29–30.

[14] *Black*, Doc. 253 at 3.

[15] *Id.* at 3 & 12 ("The Court subsequently issued a clawback order directing the government to gather and surrender to the Court all audio recordings in its possession, in the possession of investigative agencies, and in the possession of other defendants who had received them in discovery.").

[16] *Id.* at 40. At the September 7, 2016 hearing in *Black*, "[t]he Court ordered the government to retain and preserve all of the hard drives as well as all of the hardware necessary to access the information on the hard drives." *Id.*

[17] *Black*, Doc. 146 (Appointment Order).

[18] *Black*, Doc. 193.

[19] *Id.* at 3, 5 (specifically, CCA Attorney Meeting Rooms 3 and 6 through 9).

[20] *Black* Order at 66.

CCA on May 17, 2016.[21]  There is no dispute that the USAO disgorged the video recordings to the Court on August 9, 2016.  Nor is there evidence that the government maintained copies of the video recordings on a computer (the "AVPC") or on Special Agent Jeff Stokes's laptop after that time.[22]

The government did not cooperate with the Special Master's investigation, however, and its failure to cooperate ultimately resulted in a lengthy delay in this Court's ability to rule on these issues.  Finally, despite the delay associated with the government's failure to cooperate and its litigation efforts challenging the propriety of the Special Master's investigation, the Court conducted a full evidentiary hearing on all pending matters in *Black* in October and November 2018.

On August 13, 2019, the Court issued the *Black* Order, which detailed, among other things, the government's view that soundless video recordings are not protected communications and rejected the government's argument that the communication in the videos is too rudimentary to discern whether it involves legal advice or strategy or to disclose the content of any accompanying verbal communication.[23]  The Order also addressed the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[24]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[25] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully

---

[21] *CCA Rec. Lit.*, Doc. 784 at 13.

[22] *Id.* at Doc. 546 (Petitioners' Notice of Errata withdrawing any such allegations individually or collectively advanced).

[23] *Black* Order at 164–65.

[24] *Id.* at 145–62.

[25] 70 F.3d 1132 (10th Cir. 1995).

intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[26]  Once those elements are established, prejudice is presumed.[27]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[28]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the video recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the video of the attorney-client meeting exists; and (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel.[29]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the meeting(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[30]

---

[26] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[27] *Id.*

[28] *Id.* at 163.

[29] *Id.* at 166.

[30] *Id.*

C.        **Proceedings in Consolidated Master Case**

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[31]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.

The Court also assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.  In addition to the two threshold showings recited above, this Court stated during a September 2019 status conference that the privilege logs for video recordings would need to describe the specific topic of any confidential attorney-client communication, for example, plea negotiations as well as an indication that "some nonverbal communication going on about that [topic] that . . . is observable."[32]  The government argues that many of the privilege logs fail this subjective test because (1) many of them do not describe the topic of any communication or describe the communicative value of any observable nonverbal gestures; (2) boilerplate statements that a video reveals attorney communications or that communication was about legal advice and strategy are too vague; and (3) physical gestures such as pointing to documents or a laptop alone are not sufficient to establish privileged attorney-client communications are depicted on a soundless video.  The Court must review the recordings in

---

[31] *CCA Rec. Lit.*, Doc. 1.

[32] Doc. 21 at 50.

order to rule on these objections, and will do so on a case-by-case basis as needed.  There is no need for such particularized review in the instant case.

As detailed in the Court's October 15, 2020 Orders, the parties' initial efforts at cooperation culminated in the government's notice that it refuses to comply with discovery orders and demands that the Court rule immediately on both the procedural and merits defenses raised in its responses to the § 2255 motions.[33]  Highly summarized, the Court: (1) reaffirmed its previous ruling on the government's implied waiver argument and, in light of the government's blanket objections to petitioners' privilege logs, established a procedure for *in camera* review of the recordings; (2) reaffirmed the finding that soundless video recordings may be protected communications and found that petitioners did not waive any protection because the attorney meeting rooms were monitored; (3) ordered the parties to supplement their responses and replies to address jurisdictional defenses and the collateral-attack waiver by plea agreement issue; and (4) found the government's refusal to comply with discovery orders issued by the Court sanctionable under Fed. R. Civ. P. 37(b)(2) and notified the government of its intent to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims with for any petitioner who establishes that he or she is entitled to an evidentiary hearing.[34]

On January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-waiver by plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification

---

[33] *CCA Rec. Lit.*, Docs. 587, 588.

[34] *Id.*

requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[35]  Petitioner

was granted an extension until March 29, 2021, to file his certification.[36]

### D.  Recordings in this Case

On August 13, 2019, this Court released the video recordings to the FPD as a result of the

*Black* investigation.[37]  The government received one video recording of Petitioner meeting with

Edmonds at CCA on March 9, 2016.  Petitioner was prosecuted by AUSA David Zabel and

SAUSA Erin Tomasic.[38]  AUSA Zabel stated in an affidavit that he was not aware of the video

recording of the meeting nor did he review it.[39]

Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed

protected communication, verifying that during this meeting, Petitioner discussed matters

relating to legal advice and strategy with Edmonds.[40]  Petitioner also provided a sworn

declaration from Edmonds, stating that he reviewed the video recording listed on the privilege

log that occurred on March 9, 2016, and confirmed, with respect to the recorded meeting and

each other meeting with Petitioner at CCA: (1) the only reason he met with Alvarez "was to

discuss matters related to legal advice or strategy; and (2) he had no knowledge nor did he

believe that the meetings were recorded as they were attorney-client protected, that he did not

consent to such, and that he was not aware such recordings would be dispensed to prosecutors.[41]

---

[35] *Id.*, Doc. 730 (clarified and reconsidered in part on other grounds, *id.*, Doc. 784).

[36] *Id.*, Doc. 782.

[37] *Black* Order at 165.  The FPD took possession of the DVR hard drives on August 16, 2019.  *Black*, Doc. 761.

[38] Tomasic was terminated in May 2017, after she admitted to listening to calls between a defendant and counsel in a separate criminal proceeding.  *Black* Order at 98.

[39] *Alvarez*, No. 18-2449-JAR-JPO, Doc. 3-1.

[40] *CCA Rec. Lit.*, Doc. 205-2, at 3.

[41] *Alvarez*, No. 18-2449-JAR-JPO, Doc. 6-1.

The Court reviewed the video recording *in camera*.  As set out in the privilege log, the Court confirms that the video recording shows Petitioner meeting with Edmonds.  In light of the analysis below, however, the details of the meeting visible in the video are not pertinent and will not be discussed in this order.

## II.    Discussion

The government argues that Petitioner lacks standing to challenge both his conviction and sentence, including any term of supervised release, because the soundless video recordings were received after Petitioner was sentenced.[42]

### A.    Justiciability Standards

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  Federal courts must have a statutory or constitutional basis to exercise jurisdiction.[43]  And, without jurisdiction, a court must dismiss the case.[44]  Courts thus must determine, either *sua sponte* or upon a challenge by a party "at any stage in the litigation," whether subject matter jurisdiction exists.[45]  Article III's case-or-controversy requirement applies at all stages of litigation.[46]  There are three basic elements of standing: (1) an injury, (2) a causal connection between that injury and conduct complained of in motion, and (3) the likelihood that court action could redress that injury.[47]  To demonstrate causation, a party must show that their

---

[42] *Id.*, Doc. 5.

[43] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

[44] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

[45] *Arbaugh,* 546 U.S. at 506 (explaining that challenges to subject matter jurisdiction "may be raised . . . at any stage in the litigation, even after trial and the entry of judgment.").

[46] *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

[47] *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 2021 WL 850106, at *2 (Mar. 8, 2021).

alleged injury is "fairly traceable" to the complained of conduct.[48]  "Article III . . . require[s] proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."[49] "When '[s]peculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,' this burden has not been met."[50]

###### B.    Timing of the Alleged Violation

The recorded meeting between Petitioner and Edmonds took place on March 9, 2016, after he entered a guilty plea on January 7, 2016, and before he was sentenced on April 14, 2016. As noted above, however, the USAO did not have possession of and access to the video recordings until May 17, 2016, and it gave up possession when it disgorged the videos to the Court on August 9, 2016.  Thus, any alleged Sixth Amendment violation could not have occurred until after both Petitioner's plea and sentencing were already complete, leaving no redressable injury.

As this Court discussed in its January 18, 2021 Order, when the alleged intrusion occurs after the petitioner was sentenced, "the intrusion cannot be tied to any claimed unfairness or impropriety in the conviction, plea, or sentencing process.  Without such a nexus, these petitioners cannot proceed with claims challenging either their conviction or sentences."[51] Falling squarely into this category, the Court concludes that Petitioner lacks standing to

---

[48] *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (*citing Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)).

[49] *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).

[50] *Id.* at 1157 (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)).

[51] *See CCA Rec. Lit.*, Doc. 730 at 53.

challenge his conviction and sentence and his motion must be dismissed for lack of jurisdiction.[52]

### III.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[53]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' *and* (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[54]  For the reasons explained above, Petitioner has not met either showing and the Court therefore denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Joshua Alvarez's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 539), as supplemented, is **dismissed**.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: <u>March 22, 2021</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[52] Because this lack of standing provides a sufficient basis to dismiss Alvarez's § 2255 motion, the Court does not address the government's other argument that his claim is untimely under § 2255(f)(4).

[53] 28 U.S.C. § 2253(c)(2).

[54] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (emphasis in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).